IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

-------------------------------------------------------X
                                                       :
ASCO POWER TECHNOLOGIES, L.P.                          :
                                                       :
         Plaintiff,                                    :
                                                       :
   vs.                                                 :   Civil Action No.  03-CV-1942 (WHW)(SDW)
                                                       :
PEPCO TECHNOLOGIES, L.L.C.,                            :
                                                       :
         Defendant.                                    :
                                                       :
-------------------------------------------------------X

**DEFENDANT PEPCO TECHNOLOGIES, L.L.C.'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO ASCO TECHNOLOGIES, L.P.'S
<u>UNTIMELY CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

THELEN REID & PRIEST LLP

Julie L. Friedberg  (JF 6932)
200 Campus Drive, Suite 210
Florham Park, New Jersey  07932
973.660.4405

*Attorneys for Defendant Pepco Technologies, L.L.C.*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.   PLAINTIFF HAS FAILED TO RAISE ANY TRIABLE FACT ISSUES ON ITS CLAIM FOR BREACH OF CONTRACT THAT WOULD DEFEAT ENTRY OF SUMMARY JUDGMENT IN PEPTECH'S FAVOR ................................................. 3

II.  PLAINTIFF HAS FAILED TO RAISE ANY TRIABLE FACT ISSUES ON ITS PROMISSORY ESTOPPEL CLAIM ............................................................................ 6

III. PLAINTIFF FAILS TO RAISE ANY TRIABLE FACT ISSUES ON ITS ACCOUNT STATED CLAIM WHICH ENTITLES PEPTECH TO SUMMARY JUDGMENT AS A MATTER OF LAW .............................................................................................. 8

IV.  PLAINTIFF FAILS TO RAISE ANY TRIABLE FACT ISSUES ON ITS FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS ............................................ 8

V.   PLAINTIFF FAILS TO RAISE ANY TRIABLE FACT ISSUES ON ITS QUANTUM MERUIT CLAIM ...................................................................................... 11

VI.  PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT IS UNTIMELY .............. 12

CONCLUSION ...................................................................................................................... 12

NY #696405 v1

# TABLE OF AUTHORITIES

Page

**CASES**

*Alicke v. MCI Communications Corp.*,
111 F.3d 909 (D.C. Cir. 1997) .................................................................................. 10

*American Postal Workers Union, AFL-CIO v. United States Postal Service*,
940 F.2d 704, 291 U.S. App. D.C. 273 (D.C. Cir. 1991) ........................................... 3

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................ 2, 9

*Appeal of McGrew Machine Co., WDBCA 892*,
3 CCF 551 (1945) ....................................................................................................... 3

*Celotex Corp. v. Catrett*,
477 U.S. 417 (1986) .................................................................................................... 7

*Chin v. Lewin*,
16 F.2d 512 (D.C. 1926) .............................................................................................. 8

*Conseco Industrial, Ltd. v. Conforti and Eisele, Inc.*,
627 F.2d 312 (D.C. Cir. 1980) ..................................................................................... 5

*Dale Denton Real Estate v. Fitzgerald*,
635 A.2d 925 (D.C. 1993) ......................................................................................... 11

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
352 F.3d 775 (2d Cir. 2003) ........................................................................................ 4

*Duffy v. Charles Schwab & Co., Inc.*,
123 F. Supp. 2d 802 (D.N.J. 2000) ........................................................................... 11

*E.P. Hinkel & Co. v. Manhattan Co.*,
506 F.2d 201 (D.C. Cir.1974) ..................................................................................... 3

*Flippo Construction Co., Inc. v. Mike Parks Diving Co.*,
531 A.2d 263 (D.D.C. 1987) ....................................................................................... 8

*Frey v. Pennsylvania Airlines*,
859 F. Supp. 137 (M.D. Pa. 1992) .............................................................................. 7

*Gatewood, et al. v. United States Cellular Corp.*,
953 F.2d 1393 (D.C. Cir. 1992) .................................................................................. 5

*Ghahremani v. Uptown Partners, L.L.C.*, No. Civ.A. 05-1270CKK,
   2005 WL 3211463 (D.D.C. Nov. 13, 2005) .................................................................. 3

*Gennari v. Weichert Co. Realtors*,
   148 N.J. 532 (1997) .................................................................................................... 10

*Herbert v. Newton Memorial Hospital*,
   933 F. Supp. 1222 (D.N.J. 1996) ................................................................................ 7

*Instructional Systems, Inc. v. Computer Curriculum Corp.*,
   130 N.J. 324 (N.J. 1992) ............................................................................................. 2

*Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc., et al.*,
   196 N.J. Super. 16, 481 A.2d 553 (N.J. Super. Ct. 1984) .......................................... 2

*Lobiondo v. O'Callagahan*,
   815 A.2d 1013 (N.J. Sup. Ct. 2003) ........................................................................... 6

*Marlowe v. Argentine Naval Commission*,
   808 F.2d 120 (D.C. Cir. 1986) .................................................................................... 3

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................ 2, 5, 9, 11

*NRM Corp. v. Hercules, Inc.*,
   758 F.2d 676, 244 U.S. App. D.C. 356 (D.C. Cir. 1985) ........................................... 3

*Pane v. RCA Corp.*,
   868 F.2d 631 (3d Cir. 1989) ....................................................................................... 7

*Quick v. NLRB*,
   245 F.3d 231 (3d. Cir. 2001) ....................................................................................... 4

*Radiation Systems, Inc. v. Amplicon, Inc.*,
   882 F. Supp. 1101 (D.D.C. 1995) ............................................................................... 5

*Railan v. Katyal*,
   766 A.2d 998 (D.C. 2001) ........................................................................................... 6

*Regency Communications, Inc. v. Cleartel Communications, Inc.*,
   160 F. Supp. 2d 36 (D.D.C. 2001) .............................................................................. 11

*Robinson v. The Detroit News, Inc.*,
   211 F. Supp. 2d 101 (D.D.C. 2002) ............................................................................ 7

*Stanford Hospital and Clinics v. NLRB*,
    370 F.3d 1210 (D.C. Cir. 2004) .................................................................................... 4

*Stauffer v. William Penn School District*,
    829 F. Supp. 742 (E.D. Pa. 1993) ................................................................................. 7

*Tozzi v. Union Railroad Company*,
    722 F. Supp. 1236 (W.D. Pa. 1989) .............................................................................. 7

*Triple Point Technology, Inc. v. D.N.L. Risk Management, Inc.*, No. CIV.A.99-4888WHW,
    2000 WL 1236227 (D.N.J. April 11, 2000) ................................................................ 11

## STATUTES

Fed. R.Civ.P. 56(e) ................................................................................................................ 7

U.C.C. § 2-208, comment 4 .................................................................................................. 4

U.C.C. § 28:2-208 (2) ............................................................................................................ 3

NY #696405 v1

## PRELIMINARY STATEMENT

Despite the bulk and length of its opposition, Plaintiff Asco Power Technologies, L.P. ("ASCO") has failed to identify any triable issues of fact sufficient to withstand Defendant PEPCO Technologies, L.L.C.'s ("PepTech") motion for summary judgment. It is obvious from ASCO's prolix and rambling opposition that the main thrust of its papers is to kick up enough dust to hide the fact that no material questions of fact exist in this case. Indeed, when the dust settles, the following material facts remain undisputed:

- The parties agreed to an April 2000 Purchase Order (or "Purchase Order") for the potential purchase of 10,000 disconnect switches, the terms and conditions of which were set forth in Attachment "A". (Def. Statement of Undisputed Material Facts ("UF")), ¶¶ 11; 16; ASCO's Complaint, ¶ 10; ASCO Opp., at pps.1-2, 6, 14.

- Pursuant to the plain language of the Purchase Order, PepTech is only liable to purchase the specific quantities of disconnect switches that PepTech expressly ordered or released for manufacture. UF ¶ 17.

- Pursuant to the plain language of the Purchase Order, ASCO is liable for any premature purchase of materials or advance production of units without PepTech's authorization. UF ¶¶ 16; 17.

- Neither Bradley W. Johnson, PepTech's "Authorized Representative", nor any PepTech employee, ever made a request or promise for or authorized the manufacture of units claimed by ASCO in its Complaint. UF ¶¶ 19; 30; 31.

- The Purchase Order was designated by ASCO as a "3A Hold" or "Hold for Release" meaning PepTech had not authorized the manufacture of any units under the Purchase Order. UF ¶¶ 24-27.

- Without authorization from PepTech, ASCO manufactured 750 units and obtained parts for additional units in August 2000. ASCO Opp., at p. 9.

- Jason Thorne, ASCO's district manager, discovered the premature purchase of materials and manufacture of units and wrote to his ASCO colleagues on September 8, 2000 advising that "PEPCO has not released any order for manufacture" and that ASCO was now "turning to [PepTech] and demanding that they [ac]cept material on which they have not authorized manufacture." ASCO cannot "force the customer to take delivery." "[ASCO] cannot do this!!" Dep. of Jason Thorne ("Thorne Dep."): 74:20-75:6; UF ¶ 31.

- The units and materials referenced in Mr. Thorne's September correspondence are the same units and materials at issue in this lawsuit. UF ¶ 27; ASCO Opp., at p. 6.

These are all the facts necessary for this Court to decide summary judgment in this straightforward case.

Unable to dispute these material facts with *any* record evidence, ASCO now seeks to fabricate fact issues by claiming that the April Purchase Order is ambiguous and that the parties' course of conduct somehow suggests that PepTech must pay for units it never authorized for manufacture. This argument – indeed, ASCO's entire case – is disingenuous, particularly in light of ASCO's admission, through its representative Jason Thorne, that it was wrongly attempting to force PepTech to take delivery of materials and units that it knew PepTech had never authorized. Significantly, despite the critical import of this admission, ASCO fails to even mention it in its opposition brief. And, no wonder. The admission is fatal to ASCO's case. Simply put, ASCO has failed to put forth any evidence to support its claims for breach of contract, promissory estoppel, account stated, fraud, negligent misrepresentation and quantum meruit sufficient to withstand summary judgment. As such PepTech is entitled to summary judgment on each of these counts as a matter of law.

Furthermore, Plaintiff's cross-motion for summary judgment, which was filed nearly three months after the Court-ordered summary judgment deadline, must be denied.

## ARGUMENT[1]

In opposing summary judgment, a party cannot merely rest upon the allegations or denials of its pleadings or offer conclusory or unsupported assertions. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Rather, the party resisting summary judgment must set forth "significant probative

---

[1] ASCO begins its opposition with a discussion of choice of law principles. In cases where parties have agreed to be governed by the law of a particular state, here the District of Columbia, New Jersey courts will uphold that contractual choice if it does not violate New Jersey's public policy. *See Instructional Systems, Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (N.J. 1992); *see also Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc., et al.*, 196 N.J. Super. 16, 21, 481 A.2d 553, 555-56 (N.J. Super. Ct. 1984) (*citations omitted*) (indicating that New Jersey adheres to the Restatement (Second) of Conflict of Laws § 187 (1969) in determining choice of law issues). Nonetheless, as conceded by ASCO in its opposition, there is no conflict between New Jersey and District of Columbia law on any of the issues presented in this case. Moreover, ASCO has not asked, nor should this Court, ignore the law cited in PepTech's opening brief. As such, the law cited in PepTech's opening brief applies.

evidence" showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). ASCO does not – nor can it – overcome these hurdles.

### I. PLAINTIFF HAS FAILED TO RAISE ANY TRIABLE FACT ISSUES ON ITS CLAIM FOR BREACH OF CONTRACT THAT WOULD DEFEAT ENTRY OF SUMMARY JUDGMENT IN PEPTECH'S FAVOR

It is well settled that a Court shall interpret the meaning of an unambiguous contract by its clear and express terms. *American Postal Workers Union, AFL-CIO v. United States Postal Service*, 940 F.2d 704, 708, 291 U.S.App.D.C. 273, 277 (D.C. Cir. 1991); *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 244 U.S.App.D.C. 356 (D.C. Cir. 1985). Only if the Court determines as a matter of law that the agreement is ambiguous will it look to extrinsic evidence of intent to guide the interpretive process. *See E.P. Hinkel & Co. v. Manhattan Co.*, 506 F.2d 201, 204 (D.C. Cir.1974); *Appeal of McGrew Machine Co.*, WDBCA 892, 3 CCF 551 (1945). The Uniform Commercial Code (U.C.C.), which governs contracts for the sale of goods, is consistent with this established rule of construction. *See Marlowe v. Argentine Naval Commission*, 808 F.2d 120, 124 (D.C. Cir. 1986); *Ghahremani v. Uptown Partners, L.L.C.*, No. Civ.A. 05-1270CKK, 2005 WL 3211463, at *14-15 (D.D.C. Nov. 13, 2005). Indeed, the U.C.C. provides that the express language of a written agreement controls: the language of an agreement and course of performance shall be construed whenever reasonable as consistent with each other, but when such construction is unreasonable, "express terms shall control course of performance." D.C. U.C.C. § 28:2-208 (2).

Here, the express terms of the Purchase Order – which plaintiff concedes is the contract at issue in this case – is clear and unambiguous. Specifically, PepTech was required to make a specific request for the manufacture of disconnect switches (*see* Attachment "A" to the Purchase Order) before ASCO was required to purchase material for or manufacture those units. The Purchase Order also expressly provided that any premature purchase of material or manufacture of switches in advance of a specified release

would remain the responsibility of ASCO. Thus, this Court need not look any further than the Purchase Order terms to find, as a matter of law, that Plaintiff's breach of contract claim must fail.

Even if the parties' course of performance is considered, as ASCO argues, this result does not change. Plaintiff – who bears the burden of proof in this case – has offered no admissible evidence of performance under the Purchase Order sufficient to allow this Court to ignore the express terms of the Purchase Order. Indeed, the only evidence of "performance" under the April Purchase Order consisted of a delivery of 250 switches in December 2000. Interestingly, however, these switches were part of the batch of switches that ASCO had prematurely manufactured and already had in stock. PepTech never made a request for the manufacture of these or any units under the Purchase Order - PepTech simply took delivery of these units and paid for them. Thus, there was no "performance" under the April Purchase Order from which ASCO can legitimately argue course of performance. Nonetheless, nothing in connection with this "performance" is at odds with or otherwise works to alter the express terms of the Purchase Order. Moreover, even if it were at odds, it is well settled that a single act of performance under an agreement is not enough to create a course of conduct sufficient to change the written terms. *See Stanford Hospital and Clinics v. NLRB*, 370 F.3d 1210, 1214 (D.C. Cir. 2004) ("a single deviation – undisputably inadvertent – does not constitute a course of dealing sufficient to render the representation clause ambiguous") (*citing Quick v. NLRB*, 245 F.3d 231, 247 (3d Cir. 2001) ("evidence of one occasion 'is not evidence of past practice'")); *see also Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) (single act "is not a course of performance sufficient to demonstrate mutual assent" to modification of agreement); U.C.C. § 2-208, comment 4 ("single occasion of conduct does not establish course of performance").

Knowing that these facts and the well settled law is fatal to its case, Plaintiff attempts to bolster its course of performance argument by suggesting that the Court look to the parties' *pre*-April 2000

relationship to interpret the terms of the April Purchase Order. Specifically, Plaintiff argues that a letter written by ASCO in March 1999 – a letter that directly contradicts paragraph 11 of the April Purchase Order – justifies the re-writing of the *later* negotiated April agreement. Plaintiff's argument misses the mark.

First, there is no "performance" for this Court to consider. There is no evidence in the record whatsoever, either before the April Purchase Order was drafted or after, of an instance where ASCO purchased materials based on forecasts and manufactured units that PepTech ultimately did not take possessions of yet acknowledged a responsibility for payment. Rather, what ASCO is really asking this Court to do is not, as it suggests, refer to a course of performance between the parties to interpret the April Purchase Order, but to re-write the April Purchase Order altogether, delete paragraph 11 of the Purchase Order and include in it instead, terms of a March 1999 letter. It is well settled that Courts will not re-write contracts.[2] *See Gatewood, et al. v. United States Cellular Corp.*, 953 F.2d 1393, 1397 (D.C. Cir. 1992); *Conseco Indus., Ltd. v. Conforti and Eisele, Inc.*, 627 F.2d 312, 314-15 (D.C. Cir. 1980).

Second, course of performance cannot be established by conduct occurring *before* the terms of an agreement are negotiated. Indeed, in every case that ASCO cites for this proposition, the course of performance sought to modify the respective agreement occurs *after* the execution of the agreement. Applying common sense, no party could reasonably expect to rely upon a course of performance that was undertaken prior to an express agreement between those parties. *See Radiation Systems, Inc. v. Amplicon, Inc.*, 882 F.Supp. 1101, 1104 (D.D.C. 1995) (parties' course of performance *after* the execution of the contract straying away from the express wording of the agreement can operate as a waiver of express terms) (*emphasis added*).

---

[2] Significantly, ASCO never explains why, after receiving the April Purchase Order, it did not seek to change the written terms, by deleting or otherwise marking up the Purchase Order, as it now claims it intended to do. The only "evidence" of an attempt to alter the terms of the Purchase Order after its negotiation, is ASCO's own self-serving statements that it had meetings with PepTech where the terms were discussed. Such self-serving statements, without more, are insufficient to defeat summary judgment. *See Matsushita*, 475 U.S. at 586.

The *only* extrinsic evidence that is relevant to an interpretation of the April Purchase Order is Jason Thorne's September 2000 correspondence – correspondence that ASCO conspicuously ignores throughout its 32-page opposition brief – which confirms that PepTech had not only not authorized the manufacture of any switches at that time, but that ASCO had prematurely ordered parts and manufactured units of which it was going to try and force PepTech to take possession. These are the same units and parts that ASCO is wrongly seeking compensation for in this case. As such, Plaintiff's breach of contract claim must fail as a matter of law.

## II. PLAINTIFF HAS FAILED TO RAISE ANY TRIABLE FACT ISSUES ON ITS PROMISSORY ESTOPPEL CLAIM

A claim of promissory estoppel requires, first and foremost, proof of reasonable reliance on "a clear and definite promise." *Lobiondo v. O'Callagahan*, 815 A.2d 1013, 1020 (N.J. Sup. Ct. 2003); *Railan v. Katyal*, 766 A.2d 998, 1009 (D.C. 2001). Plaintiff has not, nor can it, meet this burden, let alone offer evidence sufficient to withstand summary judgment. First, Plaintiff has offered no evidence whatsoever of a "clear and definite" promise (i) for the manufacture of the 500 units that ASCO demands payment for, or (ii) that PepTech would pay for units or materials in advance of production. It is undisputed that no promises were made or orders placed for the manufacture of any switches. Indeed, the record evidence is undisputed: the April Purchase Order was always designated a "3A Hold" meaning that at no time did PepTech authorize the manufacture of units. UF ¶¶ 21-22. Rather, Plaintiff only offers the existence of "tentative" forecasts, forecasts that were "always changing", and "possible" needs – none of which constitute a clear and definite promise. UF ¶ 23.

Furthermore, Plaintiff offers nothing more than its own self-serving statements that PepTech employees agreed to pay for advance purchase materials. Not only is this "evidence" belied by the express terms of the April Purchase Order, but it is well-settled that such unsupported, self serving statements cannot defeat summary judgment. Because a motion for summary judgment is designed to go

beyond mere allegations, a certain degree of "factual specificity is required of a party opposing such a motion." *See Herbert v. Newton Memorial Hospital,* 933 F. Supp. 1222, 1229 (D.N.J. 1996) (*citing Celotex Corp.,* 477 U.S. at 322-23); *Frey v. Pennsylvania Airlines,* 859 F. Supp. 137, 141 (M.D.Pa. 1992); *Tozzi v. Union Railroad Company,* 722 F. Supp. 1236, 1239 (W.D.Pa. 1989); Fed. R.Civ.P. 56(e). Accordingly, in order to defeat a properly supported motion for summary judgment, a plaintiff cannot simply rely on "vague", "self-serving" statements which are "unsupported by specific facts in the record." *Herbert,* 933 F. Supp. at 1229; *Stauffer v. William Penn School District,* 829 F. Supp. 742, 748-49 (E.D. Pa. 1993); *Frey,* 859 F. Supp. at 141; *Tozzi,* 722 F. Supp. at 1239. Rather, plaintiff "must point to concrete evidence in the record which supports each essential element" of a claim on which he will bear the burden of proof at trial. *Herbert,* 933 F. Supp. at 1229; *Frey,* 859 F. Supp. at 141; *Tozzi,* 722 F. Supp. at 1239. "If plaintiff fails to provide such evidence [as Plaintiff does here] then he is not entitled to a trial and [defendant] is entitled to summary judgment as a matter of law." *Herbert,* 933 F. Supp. at 1229 (*citing* Fed.R.Civ.P. 56(e)).

Furthermore, it is disingenuous for ASCO to claim that any reliance was reasonable, where it is undisputed that ASCO's own employee, Jason Thorne, expressly warned against the conduct for which ASCO now seeks to hold PepTech liable. UF ¶ 27. The April 2000 Purchase Order clearly set forth that ASCO would assume the cost for any materials or services in the absence of an express order from PepTech. UF ¶ 16. That ASCO went ahead and made commitments with no such authorization from PepTech is not justifiable reliance. Rather, it was a business risk (or mistake) that ASCO unilaterally undertook, knowing full well that it would be responsible for any such commitments. UF ¶ 27. Consequently, Plaintiff's promissory estoppel claim fails as a matter of law.[3]

---

[3] The cases relied upon by ASCO, *Pane v. RCA Corp.,* 868 F.2d 631 (3d Cir. 1989) and *Robinson v. The Detroit News, Inc.,* 211 F.Supp.2d 101 (D.D.C. 2002) do not change this result. In *Pane,* the court determined that there was no evidence of detrimental reliance, and that plaintiff's reliance was not reasonable. *Robinson* is inapplicable because there was no contract between the parties which expressly defined the parties' relationship. The issue in

### III. PLAINTIFF FAILS TO RAISE ANY TRIABLE FACT ISSUES ON ITS ACCOUNT STATED CLAIM WHICH ENTITLES PEPTECH TO SUMMARY JUDGMENT AS A MATTER OF LAW

An essential element of an account stated claim is the acknowledgement of a debt certain. *See Chin v. Lewin*, 16 F.2d 512, 515 (D.C. 1926). Here, ASCO sent a letter dated September 27, 2001 indicating the amounts it alleges were due. It is undisputed that on November 14, 2001, PepTech provided written "formal notice" of rejection of ASCO's invoice No. 453. UF ¶ 41. Thus, it is without dispute that PepTech *never* acknowledged the debt which is at issue here.

ASCO's absurd argument that an account was somehow created almost two years *before* the units at issue were manufactured and the alleged debt existed, and that PepTech's alleged failure to object to the terms of a 1999 letter (*i.e.* its alleged silence) somehow acknowledged this not-yet existing debt, is not only belied by the factual record in this case, but is wholly unsupported by the law.[4] Indeed, it is well settled that there must be a meeting of the minds on the amount due and owing and that merely sending an account alone does not – and cannot – create an account stated. *Id.* 16 F.2d at 515 (the mere sending of a statement to the creditor, coupled with silence of the debtor, are insufficient to create an account stated). Such an agreement cannot be reached on a debt that has not yet arisen. Clearly, based on these undisputed facts and well established law, ASCO's account stated claim fails as a matter of law.

### IV. PLAINTIFF FAILS TO RAISE ANY TRIABLE FACT ISSUES ON ITS FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS

ASCO's failure to cite to a single shred of credible evidence, or to any legal authority, to support its fraud claim is telling of its weakness. A party cannot merely rest upon the allegations or denials of its pleadings or offer conclusory or unsupported assertions, but must set forth "significant probative

---

*Flippo Construction Co., Inc. v. Mike Parks Diving Co.*, 531 A.2d 263 (D.D.C. 1987) was whether there was a meeting of the minds based upon a unilateral mistake in the formation of a contract. No such issue exists in this case.

[4] None of the cases relied upon by ASCO in its brief support such a ridiculous construction of this cause of action.

evidence" showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50. ASCO has not met its burden here.

Specifically, ASCO contends that despite the clear terms of the Purchase Order, PepTech misrepresented that it would pay ASCO for parts and supplies ordered in advance by ASCO. ASCO, however, failed to offer any specific evidence of a misrepresentation. Rather, ASCO contends (*without any cite to the record*) that Mr. Thorne was told by representatives of PepTech that they would pay for such expenses. Such self serving allegations – which are contrary to the express language of the April 2000 Purchase Order – cannot defeat summary judgment.

ASCO also contends that PepTech misrepresented its ability to market its product and its need for utility switches. Leaving aside the fact that ASCO has again offered no evidence whatsoever to support this theory, the theory makes no sense. PepTech had nothing to gain by "misrepresenting" its marketing abilities or its need. ASCO suggests that PepTech sought to keep such information from ASCO in an effort to take advantage of price breaks based upon quantity. Again, however, ASCO fails to cite to any evidence in support of this inference. *See Matsushita*, 475 U.S. at 586 (party opposing summary judgment must present more than a "metaphysical doubt" about material facts). Moreover, what good would it do PepTech to negotiate a price break if it never intended to purchase the units as ASCO suggests? Furthermore, the Purchase Order provides that if PepTech did not purchase all 10,000 units, there was no price break. ASCO's argument is flawed and incomprehensible.

ASCO's argument that it relied upon PepTech's initial release schedule, which ASCO claims was issued in December 1999, to begin building switches is also unsupported by the record. To the contrary, the record confirms – and Plaintiff concedes in its brief – that ASCO pre-purchased materials and manufactured units, without PepTech's authorization, by August 2000. ASCO Opp., at p. 26; UF ¶¶ 9; 14; 23; 24. On September 8, 2000, Jason Thorne sent an e-mail to his ASCO colleagues advising them

that PepTech had not authorized any manufacture of units and that ASCO could not force PepTech to purchase and take delivery of units or materials they had not ordered: *"turning to [PepTech] and demanding that they except [sic] material on which they have not authorized manufacture…We can not do this!!"* (emphasis added). UF ¶ 27. These are the exact same units and materials that are the subject of this lawsuit. "[M]ere allegations [of fraud] without factual content will not suffice." *See Report and Recommendation* of Judge Susan D. Wigenton filed on September 17, 2004, at p. 8, Lesmes Decl., Exh. 3. In light of this, ASCO's fraud claim is disingenuous at best.[5]

ASCO's negligent misrepresentation claim is equally as flawed. It is premised on the suggestion that PepTech owed ASCO a duty to notify it of its ability to satisfy the Purchase Order in question, and that fundamental fairness would dictate that PepTech had such an obligation. Once again, ASCO fails to set forth any factual or legal authority in support of its contention. Indeed, ASCO has not cited one case that supports this argument, and cannot point to any evidence that PepTech made any representation or omission in connection with its performance pursuant to the April 2000 Purchase Order generally, or with regard to projecting its product needs, that was fraudulent when made. Moreover, ASCO cannot point to any evidence that PepTech owed ASCO a duty to notify it of its ability to satisfy the Purchase Order. To the contrary, the undisputed evidence shows that the Purchase Order contemplated that the Purchase Order may not be satisfied. Indeed, it provided that if less than 10,000 units were released, a higher price would be charged. In addition, it is clear that ASCO's factory misunderstood PepTech's documentation and mistakenly manufactured switches. Mr. Thorne's September 8, 2000 email confirms this fact.

---

[5] None of ASCO's cited cases support its contention. For example, the court in *Alicke* dismissed the complaint and noted that in a common law fraud or negligent misrepresentation claim, the plaintiff must reasonably rely on the alleged misrepresentation. ASCO cannot dispute that its reliance was unreasonable, given that PepTech provided only forecasts, and no written authorization. Similarly, in *Gennari*, the court found that certain statements were not made fraudulently where there was no evidence of awareness of the falsity of those statements. ASCO cannot cite to any proof of PepTech's awareness of alleged false statements.

Unsupported speculation and mere conclusions cannot defeat a motion for summary judgment. *See Matsushita*, 475 U.S. at 586.

Notwithstanding the foregoing, ASCO has not disputed that a claim of fraud or misrepresentation fails where, as here, there is a valid, binding agreement covering the same performance that is the subject of the claim. *See Regency Communications, Inc. v. Cleartel Communications, Inc.*, 160 F. Supp. 2d 36, 42 (D.D.C. 2001) (*citing Triple Point Technology, Inc. v. D.N.L. Risk Management, Inc.*, No. CIV.A.99-4888WHW, 2000 WL 1236227, at *5 (D.N.J. April 11, 2000)). As such, Plaintiff's fraud and negligent misrepresentation claims fails as a matter of law.

## V. PLAINTIFF FAILS TO RAISE ANY TRIABLE FACT ISSUES ON ITS QUANTUM MERUIT CLAIM

ASCO also does not dispute that there can be no claim for quantum meruit where there is an express, written contract between the parties. *See Duffy v. Charles Schwab & Co., Inc.*, 123 F.Supp.2d 802, 814 (D.N.J. 2000); *Dale Denton Real Estate v. Fitzgerald*, 635 A.2d 925, 928 (D.C. 1993). Here, there was a written contract. Thus, plaintiff's quantum meruit claim cannot succeed.

ASCO's claim also cannot succeed where ASCO fails to offer any admissible evidence of a benefit conferred on PepTech. To the contrary, the evidence shows that ASCO pre-purchased materials and manufactured the units at issue without PepTech's authorization. UF ¶ 14. PepTech never took possession of these materials or units. Thus, ASCO's unsupported suggestion that PepTech "accepted, used and enjoyed these switches and services" is sheer nonsense. (ASCO Opp., at p. 30). ASCO's further suggestion that it helped PepTech obtain UL certification and that this should somehow require PepTech to pay for materials and units ASCO prematurely purchased and manufactured is, likewise, totally unsupported by the record. Plaintiff's lack of any authority to support this legal theory is further evidence of its insufficiency. As such, plaintiff's quantum meruit claim fails as a matter of law.

## VI. PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT IS UNTIMELY

On July 12, 2005, an Amended Scheduling Order was entered in this case that required all dispositive motions to be filed by September 9, 2005. Rather than abide by the Court's Order, ASCO attempts to slip this cross-motion for partial summary judgment by the Court by including it in its opposition. Significantly, ASCO never moved for leave to file an untimely motion nor did it seek consent from PepTech's counsel. ASCO's brazen inclusion of this cross-motion clearly violates this Court's Order, as well as the Rules of this Court, and must be denied.

## CONCLUSION

For the foregoing reasons, PepTech's motion for summary judgment should be granted in its entirety, and ASCO's cross-motion for summary judgment denied as untimely.

Dated: January 10, 2006

THELEN REID & PRIEST LLP

_____
Julie L. Friedberg (JF 6932)
200 Campus Drive, Suite 210
Florham Park, New Jersey 07932
973.660.4405

*Attorneys for Defendant Pepco Technologies, L.L.C.,*

*Of Counsel:*

THELEN REID & PRIEST LLP

Melissa Lesmes, Esq.
701 Pennsylvania Avenue, NW, Suite 800
Washington, D.C. 20004
202.508.4000

Stephen J. Dallas, Esq.
875 Third Avenue
New York, NY 10022
212.603.2000