NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ASCO POWER TECHNOLOGIES, L.P. | : : : | Civ. No. 03-1942 (GEB) |
| Plaintiff, | : : | **MEMORANDUM OPINION** |
| v. | : : |  |
| PEPCO TECHNOLOGIES, L.L.C. | : : |  |
| Defendants. | : : |  |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of defendant PEPCO Technologies L.L.C. ("PEPCO"), for summary judgment with respect to the Complaint filed by plaintiff ASCO Power Technologies, L.P. ("ASCO"). The Complaint was filed on March 12, 2003 in the Superior Court of New Jersey, Morris County. The action was thereafter removed to the United States District Court, District of New Jersey on April 30, 2003. The motion for summary judgment was filed on behalf of Defendant PEPCO on September 9, 2005. This matter was reassigned to the undersigned on August 25, 2006. The Court has reviewed and fully considered the parties' submissions and has decided the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, PEPCO's motion for summary judgment is granted in part and denied in part. ASCO's cross-motion for summary judgment is denied.

**I. BACKGROUND**

PEPCO was a newly formed corporation, created to manufacture and sell the GenerLink, a

device that utility companies can attach to a homeowner's electric meter to allow the homeowner to connect to a generator in the event of a power outage. ASCO is an electrical component part manufacturer that produces utility disconnect switches, a component part of PEPCO's GenerLink product. PEPCO approached ASCO in 1998 to obtain product information, and on March 11, 1999, ASCO sent a letter to PEPCO regarding a purchase of the units. Pl.'s Cert., Exh. D. According to this correspondence, PEPCO purchased 1,000 units and would be responsible for purchasing all completed units and pre-purchased materials if manufacturing was suspended by PEPCO.

In correspondence dated December 14, 1999, PEPCO contacted ASCO regarding its ability to produce units in accordance with PEPCO's business plan for 2000. Def.'s Cert., Exh. 13. The business plan projected that PEPCO would require approximately 20,000 units over a 12-month period. Id. On April 20, 2000, PEPCO submitted a purchase order ("April 2000 Purchase Order") for 10,000 units which allowed for a volume discount if PEPCO ordered a certain number of units. The April 2000 Purchase Order is the subject of this litigation.

The April 2000 Purchase Order contained terms that required ASCO to wait for written consent before manufacturing the units and instructed ASCO not to anticipate PEPCO's future needs. Id., Exh. 16, ¶ 11. Further, Paragraph 18 of the Purchase Order authorized PEPCO to terminate the order "for its convenience at any time, in whole or in part" and if so terminated, "any claim of Supplier shall be settled on the basis of reasonable, direct costs Supplier has incurred in the performance of this order. Supplier's direct cost shall include solely actual costs incurred to fulfill Ship Requests and any unamortized tooling costs as specified in this order." Id.

The April 2000 Purchase Order also incorporated an attachment B which set forth the Ship Request dates of delivery and noted that a four-week lead time was necessary in order to meet a

delivery date. However, attachment B did not specify the amount of units to be shipped or the dates of expected delivery. Id. PEPCO provided ASCO with tentative dates for delivery, which continued to change. In September 2000, ASCO's factory attempted to confirm shipment release dates with PEPCO. Def's Cert., Exh. 21. After ASCO requested this information from PEPCO, ASCO's District Manager Jason Thorne addressed the correspondence with his company in an email, stating that:

> [t]his order was entered "HOLD FOR RELEASE" and anticipated request dates were included . . . [d]ue to some unforeseen complications and market setbacks, these dates had to be changed . . . . PEPCO has not released any orders for manufacture and they have been working with us on their forecast projections . . . . Now we are turning to them and demanding that they except [sic] material on which they have not authorized manufacture . . . This was my concern in giving anticipated "customer request" dates, the factory would use these dates to manufacture material and then force the customer to take delivery. WE CAN NOT DO THIS!!

Def.'s Cert., Exh. 22. In December 2000, ASCO manufactured and delivered 250 units to PEPCO.

The April 2000 Purchase Order expired on September 15, 2001. Def's Cert., Exh. 6. On September 27, 2001 ASCO notified PEPCO that it owed payment on manufactured units and materials obtained to manufacture additional units. Id., Exh. 29. On November 14, 2001 PEPCO notified ASCO that it was suspending operations and informed ASCO that it was rejecting its invoice relating to the aforementioned units and materials. Id., Exh. 31. PEPCO subsequently sold all of its assets to Electric Power Research Institute, Inc. and ceased operation. Id., Exh. 11. On June 30, 2003, Electric Power Research Institute, Inc. granted a license to manufacture and market GenerLink to Global Power Products. Id., Exh. 32.

In March 2003, ASCO filed a Complaint against PEPCO, alleging claims including breach of contract, promissory estoppel, account stated, fraud, negligent misrepresentation and quantum

meruit.

## II. DISCUSSION

### A. Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact, .

. . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted). However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

### B. Choice of Law

In this case, the parties agree that the April 2000 Purchase Order is governed by the law of the District of Columbia, as set forth in Paragraph 2 of the Purchase Order. Def.'s Cert., Exh. 16. The parties also agree that claims arising from the April 2000 Purchase Order are governed by the law of the District of Columbia. Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy. Instructional Sys. v. Computer Curriculum Corp., 130 N.J. 324, 341-342 (N.J. 1992) (citing Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 671-72 (App. Div. 1986); Kalman Floor Co. v. Jos. L. Muscarelle, Inc., 196 N.J. Super. 16, 21-22 (App. Div. 1984)). That view is also reflected in the Restatement (Second) of Conflicts of Law § 187 (1969), which provides that the law of the state chosen by the parties will apply, unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no

other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties. ASCO is a New Jersey limited partnership with its principal place of business in Florham Park, New Jersey. PEPCO was a limited liability company, organized under the laws of Delaware, with its principal place of business in Washington, D.C. PEPCO generated the April 2000 Purchase Order in dispute.

New Jersey choice of law principles require a governmental interest analysis, in which the forum court compares the interest of the states whose laws are potentially involved in the underlying action and determines which state has the greatest interest in having its laws applied. In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 348 (D.N.J. 1997) (citing Gantes v. Kason Corp., 145 N.J. 478 (1996)). The Court's analysis must be done on an issue-by-issue basis. Gantes, 145 N.J. at 484; Reynolds v. Lancaster Cty. Prison, 325 N.J. Super. 298, 316 (App. Div. 1999). The issue-by-issue analysis may even result in the Court applying different states' laws to different issues in the same litigation. See Robeson Indus. Corp. v. Hartford Accident & Indemnity Co., 178 F.3d 160, 168 (3d Cir. 1999).

### C. Breach of Contract Claim

PEPCO seeks summary judgment on ASCO's breach of contract claim, contending that the April 2000 Purchase Order was clear and unambiguous on its face. According to PEPCO, the language of the contract establishes that PEPCO is not responsible for units manufactured without written consent or materials purchased in anticipation of future orders. However, ASCO argues that the course of dealings between the parties, namely the terms of a March 11, 1999 correspondence

detailing an order for 1,000 units, an order for 250 units in December 2000 and a meeting among the parties set forth the actual terms, including the provision that PEPCO would be responsible for manufactured units and pre-purchased materials. In viewing the facts in a light most favorable to the non-moving party, a genuine issue of material fact exists as to whether the March 11, 1999 letter set forth the negotiated terms of all future orders, or if the April 2000 Purchase Order superseded all prior terms. The parties engaged in meetings and conversations, some of which arguably resulted in orders for units without written consent. PEPCO claims that ASCO was not permitted to release orders to be shipped without written consent. However, a 250 unit order was fulfilled in December 2000. PEPCO claims that these units were not purchased pursuant to the April 2000 Purchase Order, rather they were part of a batch of switches ASCO prematurely manufactured and already had in stock. PEPCO claims it never made a request for the manufacture of these 250 units under the April 2000 Purchase Order, it "simply took delivery of these units and paid for them." Def.'s Br. at 4.

      The Uniform Commercial Codes of New Jersey and the District of Columbia are similar, and so this Court can look to either Code regarding issues related to "transactions in goods." D.C. Code § 28:2-201; N.J. Stat. § 2-102. ASCO contends that the Court must consider the parties' course of performance of the April 2000 purchase order. According to both D.C. Code § 28:2-208(1) and N.J. Stat. § 12A:2-208(1), "where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for the objection to it by the other, any course of performance accepted or acquiesced to without objection shall be relevant to determine the meaning of the agreement." ASCO contends that because 250 units were manufactured and delivered under this purchase order, and discussions involving both parties involved the continued manufacture of these units on a regular basis, this

course of performance should be considered when determining if PEPCO actually authorized the release dates. Accordingly, ASCO argues that the course of performance modifies the express terms of the contract, namely, the April 2000 Purchase Order. However, PEPCO contends that the 250 units were never expressly ordered by a written release and were part of a batch of units that ASCO prematurely manufactured and had in stock.

Because there is a dispute of material fact as to whether the March 11, 1999 letter constituted an order of units and whether those terms governed future orders, whether the December 2000 order of 250 units was authorized and if the order was filled pursuant to April 2000 Purchase Order and whether oral representations made during meetings involving ship release dates were considered binding, genuine issues of material fact exist and summary judgment is denied as to the breach of contract claim.

### D. Promissory Estoppel Claim

Under choice of law standards, the requirements for promissory estoppel are the same whether New Jersey or District of Columbia law is applied. In New Jersey, there are four elements to the doctrine of promissory estoppel: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely upon it; (3) reasonable reliance upon the promise; (4) which results in definite and substantial detriment. Fletcher-Harlee Corp. v. Pote Concrete Constrs., Inc., 421 F.Supp. 2d 831, 834 (D.N.J. 2006) (citing Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 499 (App. Div. 2003)); see also Robinson v. The Detroit News, Inc., 211 F.Supp. 2d 101, 107 (D.D.C. 2002) ("the [promisor] made a promise, that [the promisee] suffered injury due to reasonable reliance on the promise and that the enforcement of the promise would be in the public interest and would prevent injustice.").

In this case, ASCO claims it is entitled to recovery based on the doctrine of promissory estoppel because PEPCO promised to honor its prior commitment to pay for materials purchased in advance of production of the units. ASCO claims that based upon these promises it obtained materials and began production of the units. However, PEPCO contends that the manufacture of these units was "on hold" and no promises were made or orders placed for the units. ASCO offers a meeting among representatives of both companies as proof that this promise was effectuated by PEPCO, while PEPCO points to a September 2000 email from ASCO's representative, Jason Thorne, which states that orders are not to be released without written consent by PEPCO. Viewing the facts regarding the existence of the promise in favor of the non-moving party, summary judgment as to the promissory estoppel claim is denied as genuine issues of material fact exist regarding whether an order was actually placed and whether PEPCO agreed to pay for certain units and materials manufactured in advance.

**E.  Fraud Claim**

In order to prove fraud in both New Jersey and the District of Columbia, a party must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Konover Constr. Corp. v. E. Coast Constr. Servs. Corp., 420 F.Supp. 2d 366, 370 (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)); ABB Daimler-Benz Transp. v. AMTRACK, 14 F.Supp. 2d 75, 85-86 (D.D.C. 1998)(stating that the District of Columbia also requires that "in commercial contracts negotiated at arms length, reliance that is objectively reasonable.")).

This matter involves both a claim for breach of contract and a claim for fraud. New Jersey

10

and the District of Columbia law are similar when considering whether these two causes of action can co-exist. New Jersey has held that "fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F.Supp. 2d 557, 564 (D.N.J. 2002) (stating that "[t]he pattern that has emerged in New Jersey decisional law is that claims for fraud in the performance of a contract, as opposed to fraud in the inducement of a contract, are not cognizable under New Jersey law."). The District of Columbia has held that in order to sustain a claim of fraud in addition to a claim of breach of contract ASCO must either: "(i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Regency Comm. Inc. v. Parrella, 160 F.Supp. 2d 36, 42 (D.D.C. 2001).

ASCO contends that PEPCO made two fraudulent representations. First, ASCO claims that PEPCO told ASCO, after the contract was negotiated, that it would reimburse for all completed units and materials purchased to complete units in the event they were not delivered and the order was cancelled, which is contrary to the terms of the April 2000 Purchase Order. Second, ASCO contends that PEPCO misrepresented its ability to market its product and its need for units in order to negotiate a volume discount. Both of these representations were made in conjunction with the contract at issue, the April 2000 Purchase Order. Neither statement was extraneous to the contract and therefore, the claim for fraud is duplicative of the breach of contract claim. Even if the claim were not duplicative, ASCO has not established a duty outside of the contractual obligations of the parties who negotiated the terms at arms length. Therefore, PEPCO's motion for summary judgment as to claim of fraud is granted.

### F. Negligent Misrepresentation Claim

ASCO also claims negligent misrepresentation as to the two factual circumstances set forth above. In order to prevail on negligent misrepresentation claims, ASCO must show that PEPCO "negligently provided false information and that plaintiff incurred damages proximately caused by its reliance on that information." Highlands Ins. Co. v. Hobbs Group, LLC, 373 F.3d 347, 351 (3d Cir. 2004) (citing Karu v. Feldman, 119 N.J. 135 (N.J. 1990)). A defendant may be liable because it owes a duty to "any reasonably foreseeable recipient who relies on the information." Id. The law regarding negligent misrepresentation in the District of Columbia is similar to New Jersey. Burlington Ins. Co. v. Okie Dokie, Inc., 329 F.Supp. 2d 45, 48 (D.D.C. 2004) ("[T]he defendant made a false statement or omission of a fact; (2) the statement was in violation of a duty to exercise reasonable care; (3) the false statement or omission involved a material issue; (4) the plaintiff[] reasonably relied and to [its] detriment relied on the false information; and (5) the defendant's challenged conduct proximately caused injury to the plaintiff[]." (citations omitted)).

As for PEPCO's intention to reimburse ASCO for all completed units or materials, a genuine issue of material fact exists as to whether such statements were made and if they were intended to modify the contract terms. With regard to the statements concerning forecasts and PEPCO's intention to fulfill the April 2000 Purchase Order, ASCO has offered no evidence that PEPCO's statements regarding its ability to satisfy the purchase order were false or incorrect. Accordingly, PEPCO's motion for summary judgment as to ASCO's claims of negligent misrepresentation based on PEPCO's responsibility for payment of completed units and pre-purchased materials is denied. PEPCO's motion for summary judgement as to ASCO's claim of negligent misrepresentation as to the claim of PEPCO's ability to market the products is granted.

### G. Account Stated Claim

Both New Jersey and the District of Columbia law are consistent regarding accounts stated. See, e.g. Cigarrera La Moderna, S.A. de C.V. v. Inventory Mgmt. Consultant Group, 1998 U.S. Dist. LEXIS 11208, 15-16 (D.N.J. 1998)(citing Harris v. Merlino, 137 N.J.L. 717, 720 (E. & A. 1948)("an account stated occurs when a debtor and creditor come to a mutual agreement as to how much the debtor owes the creditor."); Chinn v. Lewin, 16 F. 2d 512, 515 (D.C. Cir. 1926) ("To constitute an account stated, there must be either an express or an implied agreement as to the amount due, and there must be an allegation that the account was in fact stated or agreed to."). In some circumstances, silence on behalf of the debtor can result in acquiescence to the sum due if the debtor does not respond for a reasonably long period of time. Chinn, 16 F. 2d at 513.

ASCO's account stated claim is based on PEPCO's alleged consent to the terms of the March 11, 1999 letter outlining PEPCO's responsibility for payment of all manufactured units and pre-purchased materials. ASCO claims that PEPCO knew it would be responsible for these types of charges since 1999, therefore, when the invoice was rendered to PEPCO in September 2001, PEPCO had implicitly consented to the debt by not objecting to the charges until November 2001. However, PEPCO contends that it never agreed to these charges and that it promptly rejected the invoice within a month of receiving the statement. It is clear that there was no meeting of the minds of the parties as to the amount due, as the contract terms ASCO relies upon are in dispute. Further, the one-month response of PEPCO rejecting the account was not a "reasonably long period of time" and does not convert the rendered account into a stated account. Exxon Corp. v. International Concrete Corp., 335 A.2d 236, 237 (D.C. 1975). Since ASCO has not put forth evidence that supports its claim that PEPCO agreed to the amount due, either express or implied, PEPCO's motion for summary

13

judgment as to the account stated claim is granted.

### H. Quantum Meruit Claim

Under both New Jersey and District of Columbia law, recovery under a theory of unjust enrichment or quantum meruit is not appropriate when a valid, unrescinded contract governs the rights of the parties. Van Orman v. American Ins. Co., 680 F.2d 301, 310 (3d Cir. 1982); Dale Denton Real Estate v. Fitzgerald, 635 A.2d 925, 928 (D.C. 1993)(citing Bloomgarden v. Coyer, 156 U.S. App. D.C. 109, 118 (1973)). Further, "having pleaded an express contract, the plaintiff cannot without showing a rescission, recover on quasi contract." Van Orman, 680 F.2d at 311 (quoting Moser v. Milner Hotels, Inc., 6 N.J. 278, 280-81 (1951)). Therefore, since ASCO and PEPCO both agree that a valid contract exists in this case, the claim for quantum meruit fails as a matter of law and summary judgment as to this claim is granted.

### I. ASCO's Cross Motion for Summary Judgement

ASCO cross moves for summary judgement, alleging that the 250 units delivered to PEPCO in December 2000 were purchased as part of the April 2000 Purchase Order. Since PEPCO did not order enough units to receive the volume discounted rate, as set forth in the April 2000 Purchase Order, ASCO contends that it is entitled to the difference between the price paid by PEPCO and the higher, contracted price for ordering a lesser amount of units. PEPCO claims that the 250 units were not purchased as part of the April 2000 Purchase Order and therefore, the terms of that contract would not apply.

According to United States Magistrate Judge Susan Wigenton's July 12, 2005 Scheduling Order, all dispositive motions were to be filed no later than September 9, 2005. Because this cross motion is untimely, filed in January 2006, and because a material issue of fact exists as to whether

this order for 250 units was made pursuant to the April 2000 Purchase Order, ASCO's cross motion for summary judgment is denied.

### III. CONCLUSION

For the foregoing reasons, Defendant PEPCO's motion for summary judgment is granted in part and denied in part. Plaintiff ASCO's cross motion for summary judgment is denied. An appropriate form of order accompanies this Memorandum Opinion.

Dated: October 19, 2006

                                                                s/ Garrett E. Brown, Jr.
                                                          GARRETT E. BROWN, JR., U.S.D.J.